# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM RAY HUFFMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>BATRA, *et al.*,<br><br>    Defendants. | Case No. 1:19-cv-00655-BAM (PC)<br><br>ORDER FINDING PLAINTIFF MAY PROCEED ON COGNIZABLE CLAIMS<br><br>Doc. 13 |

Plaintiff William Ray Huffman ("Plaintiff") is a civil detainee appearing *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. Individuals detained pursuant to California Welfare and Institutions Code § 6600 *et seq.* are civil detainees and are not prisoners within the meaning of the Prison Litigation Reform Act. Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000). Plaintiff's amended complaint is currently before the Court for screening. (ECF No. 13.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by pro se plaintiffs seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks

1

monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b); 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at Coalinga State Hospital in Coalinga, CA. Plaintiff alleges that the events at issue took place at the Coalinga State Hospital ("Coalinga"). Plaintiff names the following defendants:  (1) Sanjeev Batra, M.D.; (2) Robert Winthrow, M.D., Director of Medical at Department of State Hospitals; and (3) Jonthan Hamerick, M.D., Chief Physician and Surgeon.

Plaintiff alleges that 30 years ago he had his left hip totally replaced.  In April 2017, the hip started to squeak and cause great pain.  He had two to three x-rays done at Coalinga in April and May 2017. A May 22, 2017 CT pelvis radiology report stated that there is a lateral superior migration of the femoral component, which is now articulating with the bony acetabular roof and is no longer centered with the acetabular cup and "recommended referral to the orthopedic surgery for potential revision."

On July 15, 2017, Plaintiff was in pain and taken to the Urgent Care Room and was seen by Defendant Sanjeev Batra, M.D.  Dr. Batra said there is nothing wrong with Plaintiff and that

2

1  Plaintiff was just seeking pain medication. He said that the prosthetic is out of alignment and the
2  joint needs to be pushed back into place. Dr Batra caused more pain than Plaintiff had been
3  experiencing. Dr. Batra pushed Plaintiff's leg up so hard that the hip is now broken and shattered
4  into several pieces.
5        In July 2017, Plaintiff was taken to Receiving and Release and had another CT Pelvis
6  without I.V. Contrast done on his left hip. On July 18, Plaintiff was taken to see N. Birrell Smith,
7  MD, Orthopedic Surgeon. Dr. Smith assessed Plaintiff x-ray as follows: "the x ray represents
8  catastrophic failure of acetabular component with long term chronic dislocation which has created
9  false acetabulum. This will need referral to a center such as Stanford or UCLA for complex
10 revision total hip surgery."
11       On July 21, 2017, Plaintiff was taken to Community Regional Medical Center. Plaintiff's
12 discharge instruction state: "Mr. Hoffman as a chronic dislocation of his left hip prosthesis. It is
13 too high risk to attempt reduction. He will need revision of this prosthesis by orthopedic hip
14 specialist. Mr. Huffman should remain non-weight bearing on the left lower extremity until
15 cleared by ortho. . ."
16       August 6, 2017, Plaintiff returned to Fresno Emergency room and the records indicate,
17 "You have a fracture and dislocation in your hip. Our orthopedic consults feel you would be best
18 served by following up with the surgeon at Stanford as you will require complex revision with
19 involved surgical planning on an outpatient basis." On August 9, 2017, Manavjeet Singh Sidhu,
20 M.D. submitted his orthopedic surgery clinic note on the imaging of Plaintiff: "Acetabular cup
21 loose with broken screw. Prosthetic femoral head dislocated, this is chronic because it can be
22 seen that the femoral head is now articulating in the pseud acetabulum."
23       Plaintiff alleges Plaintiff's hip is in the same condition and he has not been taken to other
24 appointments that have been recommended by Dr. Smith or by the Fresno Emergency
25 Department. Plaintiff alleges he has exhausted his administrative remedies. He alleges Defendant
26 Robert Withrow, M.D., Director of Medical Department at Department of State Hospital-
27 Coalinga, and Jonathan Hamrick, M.D., Chief Physician and Surgeon at Department of State
28 Hospitals-Coalinga are responsible for not allowing Plaintiff to go out to other medical

appointments to see an orthopedic specialist who deals with hip replacement. These doctors are the two individuals who could allow referrals to out-side medical appointments, but have not allowed Plaintiff. Dr. Withdrow stated that DSH-C will continue to consult outside medical facilities in an effort to secure a contract for specialized orthopedic surgery.  Yet, Plaintiff has not gone to other outside medical appointments other than Dr. Smith and appointments at Community Regional Medical Center in Fresno. Dr. Smith said that Plaintiff will need a referral to a center such as Stanford or UCLA for complex revision total hip surgery and Dr. Sidhu agreed with Dr. Smith that Plaintiff need a higher level of care.  Plaintiff includes as an Exhibit to the complaint a response from the Department of State Hospital, Office of Human Rights in Sacramento which stated, "[S]everal health care facilities have declined your request for reconstructive surgery. Being an estimated 8-hour surgery, your age and state of health would make this surgery risky." Plaintiff alleges that no doctor that Plaintiff saw or consulted ever said that the surgery was 8 hours, or mentioned Plaintiff's age or that the surgery was "risky."  Plaintiff asked for these reports that say the surgery is risky, or that his age mattered, and he has not received any and believes these records are false. Plaintiff should have been taken to other facilities for medical assessment.

Plaintiff seeks compensatory and punitive damages.

**III.     Discussion**

**A.  Deliberate Medical Indifference Claims**

As a civil detainee, Plaintiff's right to medical care is protected by the substantive component of the Due Process Clause of the Fourteenth Amendment. See Youngberg v. Romeo, 457 U.S. 307, 315 (1982). Under this provision of the constitution, a detainee plaintiff is "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004) (quoting Youngberg, 457 U.S. at 321–22). Thus, to avoid liability, a defendant's medical decisions regarding the plaintiff's treatment must be supported by "professional judgment." Youngberg, 457 U.S. at 321; see also Robinson v. Sziebert, 740 Fed.App'x. 614, 615 (9th Cir. 2018) (noting Fourteenth Amendment professional judgment standard applies to civil detainees). A defendant

fails to use professional judgment when her decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [she] did not base [her] decision on such a judgment." Youngberg, 457 U.S. at 323.

In determining whether a defendant has met his constitutional obligations, decisions made by the appropriate professional are entitled to a presumption of correctness. Youngberg, 457 U.S. at 324. "[T]he Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." Id. at 321. Liability will be imposed only when the medical decision "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id. at 323.

At the pleading stage and considering the facts in light most favorable to Plaintiff, Plaintiff's allegations suggest that Dr. Batra's actions departed from accepted professional judgment, practice or standards for the care provided on July 15, 2017.

**B.  Supervisory Liability**

Plaintiff asserts a claim against Dr. Withrow and Defendant Hamerick for failing to refer Plaintiff for replacement hip surgery.  Plaintiff alleges that they are responsible for authorizing all surgeries and for not allowing Plaintiff to go to medical appointments to see an orthopedic specialist who deals with hip replacements.

Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior, or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (*en banc*). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (citing Snow v. McDaniel, 681 F.3d 978, 989 (9th Cir. 2012)) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074-75; *Lacey*, 693 F.3d at 915-16. "Under the latter theory, supervisory liability

1    exists even without overt personal participation in the offensive act if supervisory officials

2    implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is

3    the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black,

4    885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

5        Plaintiff alleges that Dr. Withrow and Defendant Hamerick were personally involved in

6    denial of his medical care.  He alleges that they alone must sign off on a referral and have refused

7    to do so, despite the medical records indicating that he needs a higher level of care to correct his

8    hip medical issue. Plaintiff alleges, by inference, that these 2 supervisor defendants would not

9    refer him out for further treatment because of costs associated with the care. See Jett v. Penner,

10   439 F.3d 1091, 1098 (9th Cir. 2006) (supervisor may be liable for deliberate indifference to a

11   serious medical need if he or she fails to respond to a prisoner's request for help

12       Plaintiff's documentary evidence attached to the complaint consists of medical records

13   and his medical appeals and responses to his medical appeals.  (ECF No. Exh. A-Q.) The Court

14   may consider exhibits attached to the pleading and incorporated by reference, but is not required

15   to blindly accept conclusory allegations, unwarranted factual deductions, or unreasonable

16   inferences. See Petrie v. Electronic Game Card, Inc., 761 F.3d 959, 964 n.6 (9th Cir. 2014);

17   Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); see also Fed. R. Civ. P.

18   10(c). Nor is the Court required to accept as true allegations that are contradicted by the exhibits

19   attached to the complaint. Sprewell, 266 F.3d at 988.

20       Each of the medical reports indicate that Plaintiff's hip would need specialized care and

21   higher level of care such that the physicians consulted recommended that Plaintiff would need to

22   go to Stanford Medical Center or UCLA.  (See ECF No.13, Exh. B, p.15)  In response to

23   Plaintiff's appeals, Plaintiff was told that he has not been referred for surgery because no higher

24   level of care facility was willing to take on his surgery.  On December 12, 2017, Plaintiff's case

25   was referred to the Orthopedic Department at University of California, San Francisco and to the

26   Orthopedic Department at Loma Linda University Medical Center.  (Exh. H, p.34.)  On May 17,

27   2018, Plaintiff was told by a representative of Coalinga that no orthopedic department had agreed

28   to take his case but that the Department of State Hospitals-Coalinga "will continue to consult

outside medical facility in an effort to secure a contract for specialized orthopedic surgery." (ECF No. 13, Exh. K, p. 40.) On May 29, 2018, The California Office of Patients' Rights, to which Plaintiff had complained, responded to Plaintiff, noting that in November 2017, his case was referred to Loma Linda Medical Center for review.[1] Finally, on July 30, 2018, the third level of response to Plaintiff's medical appeal indicated that "several healthcare facilities have declined your request for reconstructive surgery. Being as estimated 8-hour surgery, your age and state of health would make this surgery risky." (Exh. O p. 49.)  Plaintiff's appeal was then closed.

Plaintiff alleges that Dr. Withrow and Defendant Hamerick did not explore options despite Plaintiff's pain and immobility.  Plaintiff alleges that he was told that he needed specialized case and that referral to Stanford would be an option, yet he has not been referred for consultation there by either Dr. Withrow or Defendant Hamerick.  In addition, Plaintiff alleges that no such documentation exists regarding referral to "several" other health care facilities or for the purported denial based on "estimated 8-hour surgery, your age and state of health would make this surgery risky."  Plaintiff alleges that no such records exist, and these statements are false and he was not referred out and was never referred to Stanford, as his medical records say he should be to correct his injury.  At the pleading stage, and considering the facts in light most favorable to Plaintiff, Plaintiff has stated a cognizable claim against Defendants Withrow and Hamerick.

**IV.     Conclusion and Order**

For the reason stated, the Court finds that Plaintiff has stated a cognizable claim against Defendants Batra, Withrow and Hamerick for denial of medical care in violation of the substantive component of the Due Process Clause of the Fourteenth Amendment.

Accordingly, it is HEREBY ORDERED as follows:

1. This action shall proceed on Plaintiff's first amended complaint, filed on January 21, 2020 (ECF No. 13), against Defendants Batra, Withrow and Hamerick for denial of

---

[1] A full copy of Exhibit L was not included in the First Amended Complaint.  Based upon Exhibit L, included with the original complaint, the California Office of Patients' Rights, to which Plaintiff had informed Plaintiff that "three health care facilities have reviewed his case.  None of them agreed to proceed with reconstruction surgery, apparently due to damage that has been done to your hip." (See ECF No. 1, Exh. L)  Plaintiff was also told that another medical group was contacted about his case but the Department of State Hospitals-Coalinga was awaiting a response.

medical care in violation of the substantive component of the Due Process Clause of the Fourteenth Amendment; and

2. A separate order will issue regarding service of the complaint.

IT IS SO ORDERED.

Dated: **June 15, 2020**            /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE